UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 14-92 (PJS/FLN/TNL) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **POSITION** |
| JAMES ALEX CESARIO II, | ) | |
| | ) | |
| Defendant. | ) | |

Mr. James Cesario II, through undersigned counsel, respectfully submits the following position regarding sentencing. On August 14, 2014, he appeared before the Court and entered a guilty plea to two counts of a five-count indictment: Count two alleged possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and Count five alleged carrying and possessing firearms during, and in relation to, and in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A) . This plea was entered pursuant to an agreement between Mr. Cesario and the government, a copy of which has been filed with the Court. The three remaining Counts are expected to be dismissed by the government at the time of sentencing.

A final Presentence Report (PSR) calculates Mr. Cesario's total offense level for Count two as 27, his criminal history category as IV, and an advisory sentencing range of 100-125 months. Count two includes a mandatory minimum sentence of 60 months. By operation of law, Count five imposes a five year term of incarceration to run consecutive

to what ever sentence is imposed for Count two.  Neither party objects to the accuracy of these calculations.

Mr. Cesario respectfully requests a sentence of 120 months.  Such a sentence would comport with the sentencing factors set forth in 18 U.S.C. 3553(a) and otherwise satisfies the statutory mandate that a sentence be sufficient, but not greater than necessary to satisfy the various purposes of punishment under federal law.

### Reflections of Fifty-one Year old Addict

James Alex Cesario was 19 years old when he first tried methamphetamine.  This was not, however, his first experience with intoxicants.  He was first exposed to alcohol when he was just 10 years old and began smoking marijuana as a young teenager.  He had his first chemical assessment done when he was 14 years old.  As Mr. Cesario looks back now through the lens of time and experience, he recalls the intense and confusing feelings he had as an adolescent.  He simply felt blindly angry and resentful; he did not know why he felt that way and frankly at that time did not care.  All he wanted was to find a place where he felt he belonged, where he was accepted, and where he could escape from whatever it was that was triggering this psychologically defensive but ultimately self-destructive rebellious streak.

Mr. Cesario grew up in a solidly middle class home with no overt sense of neglect or abuse.  His father, formerly of the United States Navy, was an accountant and provided a good standard of living for his family; his mother was at home full time.  They settled in

Burnsville, Minnesota, when Mr. Cesario was eight years old and continued to live there as a family until his parents separated when he was 16 years old, and he went to live with his paternal grandfather in Hibbing, Minnesota. From the outside, Mr. Ceasrio's childhood surely looked normal and conventional.

From the inside, however, the seeds of Mr. Cesario's undoing were being sown. However, unlike a scenario that involves overt abuse or neglect, the nature of Mr. Cesario's wound was the result of what did not happen. Mr. Cesario's father, though a good provider and apparently a hard worker, was essentially an absentee presence within the home. His father spent very time with him and his personality was cold. His father left the entire project of running the household to his wife and did very little to participate in the raising of their children. His father would not attend school events, sporting events, or other activities and ultimately conveyed the unmistakable message that his family came second (at best) to his employment. Though he could not understand it at the time, Mr. Cesario now regards this deeply impactful experience as one that inculcated a fundamental sense of rejection by his father.

This sense of passive-aggressive rejection permeated Mr. Cesario's childhood, and he reacted poorly. He began escaping through recreational drug and alcohol use and spending as much time outside the home as possible. His parents, particularly his mother, tried to intervene and respond to Mr. Cesario's drug use, but it appears that these efforts were generally rebuffed by Mr. Cesario, unsurprising for an angry and confused

adolescent trying to carve out his own identity independent of his family. It further appears that these treatment efforts were unable to draw any substantial connections as to the root cause of Mr. Cesario's maladjustment, at least none that stuck with him.

Ultimately, Mr. Cesario's sense of rejection was overtly affirmed when his parents separated when he was 16 years old. Mr. Cesario continues to regard his father in a particularly low light as a result, not because of the explicit affirmation of paternal rejection, but because of how his father treated his mother during the divorce process. He believes that his father managed divorce proceedings in a manner that left his mother in a financially precarious position, one that she has never recovered from since. His father soon remarried, and young Mr. Cesario could not help but feel that his father's new family was getting everything that his father couldn't give him, his sister, and his mother. His stepmother was likewise uninterested in incorporating Mr. Cesario into their sense of family and even prevented he and his sister from seeing their father, forcing them to sneak in visits on the sly. Even then, after everything else that had already happened, when Mr. Cesario tried to hold onto any lingering hope of a bona fide father-son relationship, his psyche was crushed anew when his father refused to stand up his new wife and insist upon an open and welcoming relationship with his first son.

Throughout the time, however, especially given the lack of obvious maltreatment, Mr. Cesario was unequipped to make sense of these family dynamics. He simply felt the powerful feelings that resulted from this prolonged period of paternal rejection. Looking

back now, Mr. Cesario now better understands how seemingly disparate parts of his life have come together.  He now knows from his mother that there is a history of depression on his father's side of the family, afflicting both his father and paternal grandmother; indeed, his father had been hospitalized on three occasions for his depressive condition.  Mr. Cesario's sister also suffers from mental health issues and continues to reside at their mother's home.  He also better understands how his early experiences have shaped and propelled him down a track of escapist behavior and a constant search for some ephemeral meaning to fill the void left by his childhood.

     Again, at the time, Mr. Cesario did not have the capacity to draw these connections and thus was unable to interrupt his reactive self in any meaningful way.  His acute sense of lack instead manifested in preternatural substance abuse for someone of his age and a generally rebellious attitude.  Tragically, without the ability to contextualize and perceive the reasons for his feelings, this teenager drifted further and further down the road of substance abuse.  Originally, these coping mechanisms and behaviors were clearly a response to his home environment; over time, however, these same mechanisms and behaviors got perverted into goals unto themselves.  Such is the nature of addiction when it begins as a form of self-medication and self-regulation: the cure inevitably becomes the disease.

     Since Mr. Cesario's rapidly maturing drug use was instigated by a psychological lack rather than purely genetic predispositions, it is truly unsurprising that his search for

acceptance and unconditional love manifested in other areas of his life. After his parents were divorced and his efforts to retain a sense of belonging with his father's new family were rebuffed, Mr. Cesario found that feeling of family with a motorcycle gang.

Since then, Mr. Cesario has had numerous contacts with the criminal justice system, many times involving controlled substances and generally becoming more serious in nature, including a conviction for second degree attempted murder in 1995. After he was released from prison in 2006, Mr. Cesario has done better, though there were two issues in the interim for misdemeanor flight from police and felony receipt of stolen property. However, to his credit, there are no further convictions involving controlled substances, and no additional convictions (or even allegations) involving the use of force.

This was largely due to incremental changes that Mr. Cesario was making in an effort to find a better path. He had now just completed a hard stretch in prison, and he did not want to return. He was also simply now older. He was no longer the rebellious teenager but a 41 year-old man whose life thus far had been lost in a futile unconscious mission to compensate. He began college course work while in prison, accumulating more than 50 hours of college credit along the way. He managed to steer clear of methamphetamine until quite recently and engaged in vocational training, eventually attending St. Paul College where he earned a G.P.A. of 3.38 and a spot on the Deans List in 2012.

Everything fell apart in 2013.  It began auspiciously as he was doing well in school and was on track for a well-paying welding job.  A vision of a newer, better future was at hand.  Instead, Mr. Cesario fell off the wagon in spectacular fashion and began to traffic methamphetamine.  This was in part due to his terribly misguided effort to generate quick cash to assist his mother who was about to lose her home to foreclosure.  This circumstance also dredged up familiar feelings regarding his father's role in creating a life of financial hardship for his mother.  Although Mr. Cesario has spent the previous six years investing in himself and a better future, all that hard work and good intentions evaporated in a heartbeat.

## I.     Conclusion

For all the foregoing, Mr. James Cesario respectfully requests a sentence of 120 months and believes that this is fully sufficient and not greater than necessary to meet to purposes of sentencing.  A supplemental position paper will be filed to specifically but briefly address the sentencing factors of 18 U.S.C. 3553(a).

Respectfully Submitted,

Dated:   October 8, 2015

*s/James S. Becker*

_____
JAMES S. BECKER
Attorney ID No. 388222
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415